**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **MARTA MUNOZ** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **09-CV-0308-KC** |
| | § | |
| **ECHOSPHERE, L.L.C.** | § | |
| | § | |
| **Defendant.** | § | |

## <u>ORDER</u>

On this day, the Court considered Defendant's Motion for Summary Judgment ("Motion") (Doc. No. 25), Plaintiff's Response to it ("Response") (Doc. No. 26) and Defendant's Reply to the Respnonse ("Reply") (Doc. No. 27).  Also considered are Plaintiff's Objections to Defendant's Evidence ("Plaintiff's Evidence Objections") (Doc. No. 26-1), Defendant's Motion to Strike Portions of Plaintiff's Summary Judgment Evidence ("Defendant's Evidence Objections") (Doc. No. 28), and the relevant responses to these objections.  For the reasons set forth below, Defendant's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part.

## I.    EVIDENCE OBJECTIONS

Both Plaintiff Marta Munoz ("Munoz") and Defendant Echosphere, LLC ("Echosphere") have lodged various objections to each other's summary judgment evidence.  These issues are addressed first, as the admissibility of the challenged evidence may affect the factual narrative. However, after due consideration and for the reasons set forth below, the Court does not sustain any of these objections.

-1-

Proffered evidence must meet certain standards of admissibility in order to be relied upon by a court in ruling on a summary judgment motion. On the one hand, a Court may rely on affidavits and declarations, even though such testimonial documents are generally inadmissible at trial. *See* FED. R. CIV. P. 56(e); *see also Thomas v. Atmos Energy Corp.*, 223 F. App'x 369, 374 (5th Cir. 2007) ("evidence [may] be submitted in a form, such as an affidavit, that would ordinarily not be admitted at trial"). On the other hand, rules against hearsay, requiring personal knowledge, and requiring the authentication of documents and exhibits are generally applied to evidence submitted in support of a summary judgment motion. *See* FED. R. CIV. P. 56(e) (requiring affidavits be made from personal knowledge); *see also Thomas*, 223 F. App'x at 373 ("Rule 56(e) requires the adversary to set forth facts that would be admissible in evidence at trial.") (citing *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 192 (5th Cir. 1991)).

## A.   Munoz's Evidence Objections

Munoz makes a number of objections that may be grouped into three categories. The first category contains objections to the Declaration of David Noll. Pl.'s Evid. Obj. ¶¶ 2-4. The second category contains objections to the Declaration of Omar Arroyo. Pl.'s Evid. Obj. ¶¶ 5-13. The third category contains objections to various documentary exhibits filed by Echosphere, but relates to the same subject matter at issue in the David Noll objections. *See* Pl.'s Evid. Obj. ¶¶ 14-16. Accordingly, the first and third categories will be discussed together, followed by the second category.

The objections to the Declaration of David Noll, Pl.'s Evid. Obj. ¶¶ 2-4, which argue that he is not competent to authenticate certain documents which he purports to authenticate, are overruled as moot. The Court does not need to rely on any of the objected-to material to reach

the conclusions on the merits set forth below, so the admissibility of the evidence does need not

be considered.  Also, Munoz's objects directly to the various documentary exhibits, filed by

Echosphere, which are the subject of the disputed Noll authentications.  *Compare* Pl.'s Evid.

Obj. ¶¶ 2-4 *with* ¶¶ 14-16.  The Court does need not rely on David Noll's authentication of a

leave extension request document related to the February 2009 period, or refer to the document

itself, because the Court finds Munoz's admissions, and testimonial descriptions of her dealings

with Echosphere, to be sufficient for present purposes.  *See* Pl.'s Evid. Obj. ¶ 2.  Similarly, the

Court can decide the issues presented without the need to consider the authentication of any notes

from Dr. Benito Marranzini or any notes in Echosphere's files.  *See* Pl.'s Evid. Obj. ¶¶ 3-4.

Accordingly, the objections to the documents themselves and to David Noll's purported

authentication of them are overruled as moot.

The objections to the Declaration of Omar Arroyo, Pl.'s Evid. Obj. ¶¶ 5-13, center around

the contention that there is no basis to believe "that Mr. Arroyo was personally involved in the

events he describes," which render his statements "hearsay" or "speculation."  *See, e.g.*, Pl.'s

Evid. Obj. ¶5.  Indeed, Munoz never states that she had dealings with Omar Arroyo on this

subject; instead, she dealt with other human resources representatives.  *See, e.g.*, Marta Munoz

Dep. 22:8-13, Mar. 2, 2010 ("Munoz Dep.") (Doc. No. 26-3).  While summary judgment

affidavits must be made on personal knowledge, Munoz's argument is misplaced.  *See* FED. R.

CIV. P. 56(e).  Omar Arroyo asserts, in as many words, that "the facts stated in this declaration

are within my personal knowledge and are true and correct and if called to testify concerning

them under oath, I could and would testify completely thereto."  Decl. of Omar Arroyo ("Arroyo

Decl.") ¶ 1 (Doc. No. 25-4).  Moreover, the Fifth Circuit has held that personal knowledge may

be implied by an employee's position in a corporate hierarchy.  *See DirecTV, Inc. v. Budden*, 420

F.3d 521, 529-30 (5th Cir. 2005) (admitting as evidence an affidavit that did not purport, on its

face, to be based on personal knowledge, on the grounds that personal knowledge may be

implied by the maker's position).  Personal knowledge, in a corporate setting, may also be based

– at least in part – on access to company records and reports, and not just personal presence

during the events at issue.  *See id.* at 530 n.40 (citing *Diamond Offshore Co. v. A&B Builders,*

*Inc.*, 302 F.3d 531, 544 n.13 (5th Cir. 2002), *overruled on other grounds by Grand Isle Shipyard,*

*Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 788 & n.8 (5th Cir. 2009)).  Given that Omar Arroyo

purports to have personal knowledge, to be the "Human Resources Manager" for Echosphere,

and to have access to the company's internal records, and that Munoz has not offered a cross-

examination or any extrinsic evidence which controverts these sworn assertions, the Court may

consider the Arroyo Declaration.  *See* Arroyo Decl. ¶¶ 1, 2, 10.  Accordingly, this objection is

overruled.

### B.    Echosphere's Evidence Objections

Echosphere has lodged its own objections to the evidence that Munoz presents when

opposing its motion for summary judgment.  *See generally* Def.'s Evid. Obj.  Specifically,

Echosphere makes four hearsay objections to pieces of testimony contained in Munoz's

deposition.  *See id.* 1-2.

Echosphere's first three objections assert that Munoz's recounting of statements allegedly

made to her by her physicians constitutes hearsay.  *See id.*  The Court does not need to reach this

issue, however, because the summary judgment issues can be decided without reference to the

truth of the matters asserted in these statements.  For the sake of setting forth the undisputed facts

in this case, the Court can simply treat these statements as reflections of Munoz's own beliefs or mental state, which is a permissible use of hearsay-like statements. *See Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1048 n.4 (5th Cir. 1996) (citing FED. R. EVID. 801(c)). For instance, Echosphere argues that Munoz's statement that "her [specialist] told her that the [medical] paperwork should be completed by her primary care physician" is hearsay. Def.'s Evid. Obj. 2. However, the Court may view this evidence as simply a reflection of what assumptions Munoz possessed during the relevant time-frame – her state of mind – without professing knowledge as to what her medical specialist actually said to her.

Echosphere's fourth objection is that Munoz's recollection of a telephone conversation she had with an Echosphere employee named Rebecca Nichols also constitutes hearsay. Def.'s Evid. Obj. 2 (referring to Munoz Dep. 22:4-23:9). Echosphere acknowledges that a hearsay exception might apply and preemptively argues that this statement is not covered by the exception for admissions of a party opponent. *See id.* (citing FED. R. EVID. 801(d)(2) (requiring, in the case of admissions by employees of party opponents, that the admissions to be within the scope of employment)). Echosphere contends that these purported admissions were not within the scope of Rebecca Nichols's authority because, in an employment discrimination case, the "declarant must be involved in the [employment] decisionmaking process" and there "is no evidence that a benefits representative in Colorado had any involvement whatsoever in Munoz's termination." *Id.* at 3 (citing *Young v. James Green Mgmt., Inc.*, 327 F.3d 616, 622 n.2 (7th Cir. 2003) (discussing the party admission rule in the context of employment discrimination cases)).

This argument is unpersuasive. First, Echosphere cites no Fifth Circuit authority showing that this narrowing of the usually-broad scope of Rule 801(d)(2) in the context of employment-

discrimination cases, by requiring the declarant's involvement in the particular employment decision at issue.  Echosphere only cites Seventh Circuit authority on this point.  *See* Def.'s Evid. Obj. 3 (citing Seventh Circuit authority); *see also Aliotta v. Nat'l R.R. Passenger Corp.*, 315 F.3d 756, 761-62 (7th Cir. 2003) (observing that the rule requiring the declarant to be involved in the particular decision at issue is an unusual narrowing of the usual party admission rule).  Second, Echosphere cites no evidence showing that Rebecca Nichols was a mere "benefits representative" in Colorado with insufficient connections to the decisions surrounding Munoz's firing.  Echosphere's brief makes this allegation, but the passages it cites in Munoz's deposition only show that, to Munoz's recollection at least, Rebecca Nichols was "from HR" in Colorado, and that Munoz had dealings with her.  Echosphere offers no other evidence to verify Rebecca Nichols's job responsibilities, or her closeness or remoteness to the decisions concerning Munoz's employment.  Third, even if this Court were to adopt the Seventh Circuit standard cited by Echosphere, that standard seemingly only requires that the declarant "be in management or in the company personnel function[] in order for [his or her] statements to qualify as" a party admission.  *Aliotta*, 315 F.3d at 762.  It appears likely that Rebecca Nichols – as an "HR" functionary – would satisfy the Seventh Circuit test, if it did apply in this Circuit.  Accordingly, the Court overrules this objection.

## II.   BACKGROUND

Echosphere is a Colorado business entity which is part of the business group which operates the satellite television broadcast service called the "Dish Network."  *See* Def.'s Proposed Undisputed Facts ¶ 1 ("Def.'s Facts") (Doc. No. 25-1).  This group is also sometimes called "Echostar."  *See* Munoz Dep. 7:20-8:3.  Echosphere has a call center located in El Paso,

Texas.  Def.'s Facts ¶ 1.  Munoz is a resident of El Paso County, Texas, who started working at

Echosphere's El Paso call center in September 1999.  Munoz Dep. 5:1-6; *see also* Pl.'s Statement

of Relevant Facts ¶ 1 ("Pl.'s Facts") (Doc. No. 26-2 at 4-9).

On December 21, 2008, Munoz suffered an acute medical episode related to her diabetes,

which required a multi-day stay in a hospital.  Def.'s Facts ¶ 1; *see also* Munoz Dep. 25:11-16.

While hospitalized, Munoz contacted Echosphere to apprise them of her condition and request

medical leave.  *See* Munoz Dep. 25:17-26:13.  Echosphere determined that she was qualified to

take leave under the Family and Medical Leave Act ("FMLA") and forwarded her some

paperwork in this connection.  Def.'s Facts ¶ 2.  Munoz completed the paperwork, which

included a request that her doctor certify that she had a serious medical condition, returned it to

Echosphere, and was granted approximately one month of leave.  *Id.* ¶ 4.  In January 2009,

Munoz requested an extra ten days of leave.  *Id.* ¶ 5.  Echosphere granted this leave without

requesting an additional medical certificate.  *Id.*  On January 30, 2009, Munoz asked for a further

period of leave.  *Id.* ¶ 6.  Echosphere claims that she then asked for an additional month.  *Id.*

Munoz claims that her request was more open ended and that she did not specify an exact amount

of extra leave.  *Id.*; *see also* Pl.'s Facts ¶¶ 14-15.

In response to the January 30, 2009, request for additional leave, Echosphere asked

Munoz to submit another doctor's certification, verifying that her medical condition rendered her

unable to work during the month of February.  Def.'s Facts ¶ 6.  This was in addition to the

original certification which covered January.  *Id.*  Munoz states that she was left with the distinct

impression that Echosphere required this certification to be from her diabetes specialist, Dr.

Marranzini.  Munoz Dep. 72:1-6.  Munoz brought the certificate to Dr. Marranzini, who neither

-7-

signed it nor returned it.  Def.'s Facts ¶ 9.

Munoz's primary care doctor, who could have completed the certificate, was apparently never contacted on this matter during the first half of February 2009.  Def.'s Facts ¶¶ 16-18. Thus, he did not complete and return this supplemental certificate by the due date written on it, which was February 17, 2009.  *Id.*  On that day, Echosphere sent Munoz, by certified mail, a letter terminating her employment and stating that her separation date was being made retroactive to January 31, 2009.  Def.'s Facts ¶ 19.  In July 2009, Munoz sued Echosphere, alleging interference with her FMLA rights, retaliation for exercising her FMLA rights, and disability discrimination under state law.  *See generally* Pl.'s First Am. Compl. ("Compl.") (Doc. No. 9).

## III.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006).  The substantive law identifies which facts are material.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 189 (5th Cir. 1996).  A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *Ellison*, 85 F.3d at 189.

"[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the

record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996). If the moving party meets its initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The nonmovant's burden may not be satisfied by "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Warfield*, 436 F.3d at 557 (quoting *Freeman v. Texas Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004)). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). "Inferences drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing" summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (ellipses in original). Thus, the ultimate inquiry in a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

### B.   Munoz's Claims Under The Family & Medical Leave Act

Munoz makes two claims under the FMLA. *See* Compl. ¶¶ 18-22. Her first FMLA claim is that Echosphere denied or interfered with her substantive rights to medical leave and job reinstatement under the FMLA. *Id.* ¶¶ 19-20. Her second FMLA claim is that Echosphere retaliated against her for exercising her right to request leave under the FMLA, by firing her for attempting to request a permitted period of additional leave. *See id.* ¶ 21. These claims will be addressed in turn.

### 1.      Interference claim

Echosphere argues that it did not interfere with or deny Munoz's FMLA rights, emphasizing that it granted her a period of protected medical leave and only fired her when she failed to fulfill her own responsibilities.  Mot. 2-5.  Specifically, Echosphere states that Munoz failed to furnish a follow-up medical certificate to support her request for an additional period of medical leave, even though she had properly furnished an initial certificate to support her initial leave period.  *Id.*  Munoz argues that Echosphere's purported request for medical re-certification was defective and that she should therefore not be held responsible for failing to furnish a follow-up certificate.  Resp. 5-7.

The FMLA provides substantive rights and protections to certain classes of workers who require time off work to care for their own medical needs or the medical needs of close family members.[1]  *See* 29 U.S.C. § 2601 *et seq.*  The central benefit conferred by this law is the qualified worker's right to take up to twelve weeks of leave in any given twelve-month period for such medical reasons; such leave may be unpaid, but the employer must go to certain lengths to keep the worker's job and benefits – or an equivalent job and benefits package – available upon the worker's return from leave.  *See id.* §§ 2611-2614.  The employer may require that the worker's health care provider certify that the worker (or the relevant family member) has the claimed serious health condition and certify the necessity of the worker taking time off on its account. *See* 29 U.S.C. § 2613 (permitting a certificate request and specifying the contents of such a

_____

[1]          There are also certain protections for close family members of military personnel who are called to active duty or deployed on operations but military family protections are not at issue in the instant case.  *See* 29 U.S.C. § 2612(a)(1)(E).

certificate).  The employer is not permitted to interfere with a worker's exercise of FMLA rights.  *Id*. § 2615.  Any worker who suffers damages on account of such interference may sue the employer for damages as well as equitable relief.  *See id.* § 2617.

    To prevail in an FMLA interference suit, a worker must show that he or she (1) was entitled to take FMLA leave; (2) gave proper notice to the employer of his or her intention of taking such leave; and (3) was denied benefits to which he or she was entitled under the FMLA.  *See Schimek v. MCI, Inc.*, No. 05-CV-45-P, 2006 WL 2252034, at *11 (N.D. Tex. Aug. 7, 2006) (citing *Cavin v. Hondo of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003)).  Whether a worker is entitled to take such leave is dependent on several other factors concerning the nature of the worker, the job position, and the employer.  *See id*.  While the statute does not specify the consequences of a worker's failure to provide a medical certificate in a timely fashion, the statute's implementing regulations provide that an employer may deny the worker leave under such circumstances.  *See id.*; *see also* 29 U.S.C. § 2613; *see also* 29 C.F.R. § 825.305(d).

    The first two elements are not disputed in this case.  Echosphere acknowledges that Munoz was entitled to take FMLA leave and that she requested it for the period at issue here.  *See* Def.'s Facts ¶¶ 2, 5-6.  Regarding the third element, Echosphere argues that it did not interfere with Munoz's FMLA rights because it only denied the second extension after Munoz failed to comply with Echosphere's lawful request for an additional medical certificate.  *See* Mot. 2-5.  In this connection, Echosphere claims that the retroactive effect of this denial – the re-characterization of already-missed workdays in February 2009 from medical leave days to unexcused absences – was proper.  *See id*.  Because those days did not have FMLA status, Echosphere argues, it was justified in firing Munoz for excessive absences under its attendance

policy.  *See id.*  Echosphere also argues that it had no legal obligation to inform Munoz that her

medical certificate had not arrived by the deadline or to provide her with additional time to

submit one.  *Id.* at 5.

While Echosphere makes numerous correct legal assertions, it has failed to furnish

adequate evidence on the critical issue of warning.  Without such evidence, the Court cannot

conclude that the request for re-certification was valid and effective, and for that reason the Court

denies summary judgment.  The FMLA implementing regulations require that when "the

employer requests certification, [it] must also advise an employee of the anticipated

consequences of an employee's failure to provide adequate certification."  29 C.F.R.

§ 825.305(d).  An employer's failure to provide an adequate warning, when required by

regulation, makes it ineligible to rely on a worker's failure to furnish a requested medical

certificate as a basis for denying FMLA leave.  *See Lubke v. City of Arlington*, 455 F.3d 489,

496-98 (5th Cir. 2006).  While there is solid evidence showing that Munoz was warned of the

consequences of failing to provide the first requested certificate, there is insufficient evidence to

show that she was similarly warned about subsequent certificates.  *See* Employer Response to

FMLA Request ("Employer FMLA Resp.") (Doc. No. 25-5 at 6-7).  The Employer FMLA

Response, issued in connection with Munoz's December leave request, states that a failure to

submit the initial certificate would "delay the commencement of [the worker's] leave or apply

[the worker's] absences to the attendance policy in effect."  *Id.* ¶ 3.  However, when addressing

the topic of re-certifications, the Employer FMLA Response does not state that such

consequences would apply to a failure to submit a re-certification.  *Id.* ¶ 9.

Moreover, there is insufficient evidence to determine that Munoz was properly warned of

the consequences of failure to submit the second certificate at the time Echosphere asked her to

submit that certificate, which was in late January 2009.  Def.'s Facts ¶ 6.  Warning at this point –

the time of request – is mandated by the regulations, and both initial certificate requests and

subsequent ones require such contemporaneous warning.  *See* 29 C.F.R. § 825.305(d) ("At the

time the employer requests certification, the employer must also advise an employee of the

anticipated consequences of an employee's failure to provide adequate certification. . . . This

provision will apply in any case where an employer requests a certification permitted by these

regulations, whether it is the initial certification, a recertification, a second or third opinion, or a

fitness for duty certificate . . . ."); *see also Hurt v. Ecolab, Inc.*, No. 3:05-CV-1508-BD, 2006 WL

1947791, at *4 (N.D. Tex. July 13, 2006) (holding that an oral warning to a worker that he

"would be terminated" if the required medical re-certification was not timely submitted was

sufficient after a written warning was furnished during the request for initial certification, which

contained an advisory that follow-up certifications would also be requested).

      Unlike the initial request for a medical certificate, Echosphere failed to submit to the

Court documentary evidence regarding warning in the context of this follow-up request.[2]  The

only evidence regarding this request comes from the deposition testimony of Munoz herself.

---

[2]    While Echosphere submits into evidence an "FMLA Leave of Absence Request" covering the period of January 31, 2009, through February 28, 2009, (to which Munoz has lodged an objection, *see* Pl.'s Evid. Obj. ¶ 14), this document contains no request for medical re-certification.  *See* Mot. Ex. 6 ("FMLA Leave of Absence Request") (Doc. No. 25-5 at 17).  Similarly, the actual follow-up certificate form furnished by Echosphere to Munoz, which she was to bring to her doctor, contained no mention of any consequences of a failure to complete or return the form.  *See* Mot. Ex. 7 ("Certif. of Health Care Provider") (Doc. No. 25-5 at 19).  The Court is unaware of any other documentary evidence relating to this particular issue and time period.

Munoz states that she was aware that she would be required to "turn in the additional medical certification in order to take additional family medical leave," and that "if the medical certification was not turned in [she] could be denied FMLA leave." Munoz Dep. 80:7-18. But she does not state how she came under that impression, and she does not state that she was made aware of any further consequences, such as the retroactive effect that a denial of FMLA certification would have or how the company would characterize the missed days. *See id.* The initial warning, by contrast, addresses these issues. *See* Employer FMLA Resp. ¶ 3.

Thus, there is only an inference that she may have been given a warning when the second certificate was requested, and the precise contents of that warning – if it happened at all – are uncertain, making it impossible to judge its adequacy under the regulations. Because "inferences drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing" summary judgment, the Court cannot bridge the evidentiary gap by drawing an inference in favor of Echosphere. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (ellipses in original). Moreover, there is evidence suggesting that the failure to adequately warn was prejudicial. Not only did Munoz submit the first certificate on time, she also demonstrated a high degree of diligence in apprising Echosphere of here whereabouts and condition after she initially fell ill. Munoz Dep. 25:11-26:5 ("When I was in the hospital – I was in the hospital on the 21st all the way through the 26th . . . I would call . . . the command center at EchoStar and I would tell them about me not going to work every single day."). Given Munoz's diligent habits, it is reasonable to infer that Munoz may well have properly returned the required paperwork had she been adequately informed of its importance. Thus, because there is inadequate evidence on the issue of Echosphere warning Munoz when it requested the subsequent medical certificate, the

court cannot conclude that its denial of FMLA leave in February was justified.  Summary judgment is therefore denied as to this claim.

### 2.    Retaliation claim

A worker may also bring a separate claim against an employer who has retaliated against that worker for engaging in FMLA activity.  The statute prohibits employers from discharging or discriminating against "any individual for opposing any practice made unlawful by this subchapter."  29 U.S.C. § 2615.  The regulations create a further set of anti-retaliation provisions, prohibiting an employer from "discriminating or retaliating against an employee . . . for having exercised or attempted to exercise FMLA rights."  29 C.F.R. 825.220(c).  The Fifth Circuit has recognized FMLA retaliation claims and applies a *McDonnell Douglas* type framework to such cases.  *See Hunt v. Rapides Healthcare Sys., LLC*, 227 F.3d 757, 768 (5th Cir. 2001).  The *McDonnell Douglas* framework, commonly applied in various types of employment discrimination cases, provides that when no direct evidence of discrimination can be adduced, a plaintiff can move forward by setting forth an inferential prima facie case of discrimination.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Once such a case is made, the employer may respond by showing that the adverse employment action was actually predicated on a legitimate, nondiscriminatory reason.  *Id*.  This burden of production requires the employer to "clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's [adverse treatment]."  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981).  The employee may then respond by showing that the proffered reason is untrue or is a mere pretext for discrimination.  *McDonnell Douglas*, 411 U.S. at 804.

Regarding FMLA retaliation claims, a prima facie case requires the plaintiff to "show

that:  (1) she was protected under the FMLA; (2) she suffered an adverse employment decision; and either (3a) that she was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because she took FMLA leave." *Hunt*, 277 F.3d at 768.  Echosphere argues that Munoz was not protected under the FMLA, and that even if she was, she cannot prove that her firing was because of her taking FMLA leave.[3]  Mot. 6-7.  Echosphere's argument regarding the first element is facially unavailing.  Munoz was eligible for FMLA leave on account of her diabetes-related acute illness, as Echosphere itself acknowledged when it granted her the first period of FMLA leave.  *See* Resp. 7; *see also* Def.'s Facts ¶ 4.  Even if it is conclusively proved that Munoz did not qualify for an extension of leave through the end of February 2009, she was qualified for – and took – an initial period of FMLA leave and is therefore subject to the statute's protection.  *See Powers v. Woodlands Religious Cmty. Inc.*, 323 F. App'x 300, 302 (5th Cir. 2009) (citing *Mauder v. Metro Transit Auth.*, 446 F.3d 574, 583 (5th Cir. 2006)).

Echosphere's argument regarding element (3b) is also misplaced.  Requiring literal proof that the adverse decision was taken 'because' the worker took FMLA leave would obviate the need for creating a burden-shifting framework; by proving this one element, the case itself would be conclusively proved.  Instead, this element of the prima facie case may be satisfied by showing (1) proximity in time, and (2) that the adverse employment action is "not completely unrelated" to the FMLA leave.  *See Mauder*, 446 F.3d at 583.  In the instant case, it is undisputed that Munoz's firing was proximate in time to her initial period of FMLA leave, that her firing

---

[3]         Munoz does not attempt to state a claim using element (3a); namely, that she was treated worse than similarly situated employees who did not take FMLA leave.

was predicated on her being absent from work, and that absence was part of an attempt to take more permitted FMLA leave.  Def.'s Facts ¶ 19.  These facts alone satisfy the third element of the prima facie test, and Echosphere cannot prevail on a theory that Munoz fails to set forth such a case.

Echosphere attempts to set forth a legitimate, nondiscriminatory reason for Muniz's firing by claiming that it was not motivated by animus toward her taking the first portion of FMLA leave.  Rather, it claims that it was motivated by her failure to submit the second medical certificate, and the resulting determination that her February absences were unexcused.  Mot. 7-8.  There is a critical gap in the evidence here, however.  The regulations permit Echosphere to deny FMLA leave in the event a properly requested medical certificate is not furnished by the employee.  29 C.F.R. § 825.305(d).  The Fifth Circuit has held that the retroactive denial of FMLA status to leave already in progress may allow the employer to deem those days to be unexcused absences and accordingly discipline the worker under the employer's usual attendance policies.  *See Urban v. Dolgencorp of Tex., Inc.*, 393 F.3d 572, 576 (5th Cir. 2004).  Echosphere takes this approach with its employees.  *See* Employer FMLA Resp. ¶ 3 (stating that failure to furnish the required medical certificate would lead to missed days being deemed unexcused absences, which Echosphere will "apply . . . to the attendance policy in effect.").  In the instant case, however, Echosphere has submitted no evidence of an attendance policy which would support the claim that firing Munoz was justified in the circumstances at issue.[4]  This lack of

---

[4]     Echosphere only points to Munoz's deposition testimony, where she admits that it would be legitimate to fire an employee for failure to return from FMLA leave.  Def.'s Facts ¶ 21; *see also* Munoz Dep. 100:21-24.  This sheds no light on what Echosphere's actual policies were, or on how such policies would apply in Munoz's case.

evidence is fatal, as *Burdine* requires the employer to set forth its legitimate nondiscriminatory reason "by producing evidence."  450 U.S. at 255.  Echosphere has provided no evidence that its attendance policies and internal procedures would actually justify the firing; it has thus not adequately set forth a legitimate, nondiscriminatory reason.  *Cf. Powers*, 323 F. App'x at 302 (citing the relevant employee manual to support the legitimate, nondiscriminatory reason of absenteeism); *see also Pittman v. Collin County*, No. 4:08-CV-357, 2010 U.S. Dist. LEXIS 30879, at *11 (E.D. Tex. Mar. 30, 2010) (citing evidence concerning employee attendance policies to support a firing after failure to return from FMLA leave).  Summary judgment is therefore denied on this claim.

### C.  Munoz's Claim Under Texas Labor Code § 21.051

Munoz has also brought a state-law disability discrimination claim in connection with her firing.  *See* Mot. 8.  Both Ecosphere and Munoz agree that the *McDonnell Douglas* burden-shifting framework also applies to Munoz's claim of disability discrimination.  *See* Mot. 9; Resp. 4; *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 356 (5th Cir. 2005) (applying the *McDonnell Douglas* framework to an age discrimination claim under the Texas Commission on Human Rights Act); *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995) (applying the *McDonnell Douglas* framework to a disability discrimination claim under federal law).  Both the Fifth Circuit and Texas state courts have held that disability discrimination claims under the TCHRA are analogous to claims under the Americans with Disabilities Act and should be interpreted similarly.  *See Rodriguez v. ConAgra Grocery Prods. Co.*, 436 F.3d 468, 474-75 (5th Cir. 2006); *Wal-Mart Stores, Inc. v. Canchola,* 121 S.W.3d 735, 739 (Tex. 2003).

As noted above in connection with Munoz's FMLA retaliation claim, *McDonnell*

*Douglas* requires a plaintiff first to establish a prima facie case of discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802.  If she is able to do so, the burden shifts to the defendant to show a legitimate business reason for the allegedly discriminatory conduct.  *See id.* at 802-03.  The plaintiff is then tasked with proving that the reason offered by the defense is merely pretext.  *See id.* at 804.

To establish a prima facie case of disability discrimination, a plaintiff must establish that (1) she is disabled, (2) she was qualified for the job, and (3) she was subjected to an adverse employment action on account of her disability.  *See Turco v. Hoechst Celanese Chem. Group*, 101 F.3d 1090, 1092 (5th Cir. 1996) (citing *Rizzo v. Children's World Learning Ctr.*, 84 F.3d 758, 763 (5th Cir. 1996)).  Accordingly, the Court must first determine whether Munoz is disabled because of her diabetes or diabetic complications.  *See Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996) ("As a threshold requirement in [a disability discrimination] claim, the plaintiff must, of course, establish that he has a disability.")

### 1.    Munoz possibly has a disability

The Texas Commission on Human Rights Act ("TCHRA") prohibits an employer from terminating an individual because of his or her disability.  *See* TEX. LAB. CODE § 21.051.  A disability is defined as "a mental or physical impairment that substantially limits at least one major life activity of that individual, a record of such an impairment, or being regarded as having such an impairment."  *Id.* at § 21.002(6).

The ADA, however, was amended by the ADA Amendments Act of 2008 (the "Federal Act"), which took effect on January 1, 2009.  This bears on a TCHRA disability discrimination claim because the state law is understood to be analogous to federal ADA law.  *Wal-Mart Stores*,

121 S.W.3d at 739.  The Federal Act explicitly rejects certain elements of the holdings in the

previously-controlling cases of *Sutton v. United Airlines*, 527 U.S. 471 (1999), and *Toyota Motor

Mfg., Ky., Inc. v. Williams*, 534 U.S. 184 (2002).  *See* ADA Amendments Act of 2008, sec.

2(b)(2)-(4), Pub. L. No. 110-325, 122 Stat. 3553, 3554.  The state law under which Munoz brings

her disability discrimination claim was amended, in September of 2009, to reflect the changes to

the ADA ("House Bill 978").  *See* H.B. 978, 81 Leg., Reg. Sess. (Tex. 2009).  However, House

Bill 978 states that any amendments are applicable "only to conduct occurring after September 1,

2009."  *Id.*  Munoz received her termination letter in February 2009, and her termination was

retroactively effective on January 31, 2009, all before the Texas Amendments took effect.  *See*

Pl.'s Facts ¶¶22-23.  Accordingly, the amended Texas statute probably does not apply to this

matter.  See Tex. Gov't Code §311.022 ("A statute is presumed to be prospective in its

operation unless expressly made retrospective.").  However, "[o]ne express purpose of chapter 21

of the Labor Code is to 'provide for the execution of the policies embodied in Title I of the

Americans with Disabilities Act of 1990 and its subsequent amendments."  *Little v. Tex. Dep't of

Crim. Justice*, 148 S.W.3d 374, 381-82 (Tex. 2004) (citing Tex. Lab. Code §21.001(3)).  An

attempt to conform to this purpose raises a question of whether *Sutton* and *Toyota Motor* are

applicable precedent for claims under the Texas Labor Code arising after the effective date of the

Federal Act but before the effective date of House Bill 978.  Accordingly, it is unclear as to

whether the pre-amendment or post-amendment law applies to Munoz's claim. Due to this

uncertainty, the Court will examine the question of whether Munoz is disabled under both

schemes.

Munoz and Ecosphere agree that "diabetes is not a per se disability."  Mot. 9 (citing

*Nawrot v. CPC Int'l*, 277 F.3d 896, 904 (7th Cir. 2002); *see also Ingles v. Neiman Marcus Group*, 974 F. Supp. 996, 1001 (S.D. Tex. 1997) (stating that courts do not consider insulin-dependent diabetes, alone, to be a disability under the ADA); *see also Hearne v. AmWest Sav. Ass'n,* 951 S.W.2d 950, 953 (Tex. Ct. App. 1997)) (so holding under TCHRA); *see also* Resp. 9. Instead, a "plaintiff must still prove that the diabetes 'substantially limits one or more' major life activity" in order to be considered disabled *Hearne*, 951 S.W.2d at 953-54 (citing *Coughlan v. H.J. Heinz Co.*, 851 F. Supp. 808, 813 (N.D. Tex. 1994)).

Ecosphere contends that Munoz's inability to perform her job was temporary and as such does not qualify as a disability.  Mot. 5.  Munoz did not have any difficulty performing her job due to her diabetes in the period proceeding her hospitalization on December 21, 2008.  *See* Munoz Dep. 53:18-54-54:4.  Rather, Munoz asserts that "at the relevant time" her diabetes substantially limited her ability to perform the major life activity of working.  Resp. 9.[5]  "In an ADA case, the relevant time for assessing the existence of a disability is the time of the adverse employment action."  *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 618 (5th Cir. 2009).  To determine whether an impairment is substantially limiting, a court should examine the nature and severity of the impairment, the duration or expected duration of the impairment, and the long term impact of the impairment.  *See Oswalt v. Sara Lee Corp.*, 74 F.3d 91, 92 (5th Cir. 1996) (citing  29 C.F.R. §1630.2(j)(2)).

There is a genuine issue of material fact regarding the expected duration of Munoz's

---

[5]          Munoz does not assert a "regarded as" or "record of" disability claim in her complaint.  She only asserts that her diabetes substantially limited her ability to work.  See Resp. 9 (citing Pl.'s Compl.¶ 10).

inability to work.  In hindsight, the parties agree that Munoz's diabetes only temporarily affected

her ability to work.  *See* Munoz Dep. 54:5-8.  However, there is evidence that, at the time of her

discharge, the expected duration of her impairment was unclear.  Ecosphere alleges that Munoz

requested to extend her FMLA leave to February 28, 2009. Def.'s Facts ¶6.  But in her

deposition, Munoz stated that she didn't know how long she would need additional leave because

she "was being referred to a consulting physician."  Munoz Dep 60:1-8.  Further, Munoz stated

that she was requesting leave until her primary physician released her.  *Id*. at 60:19-21.  Though

Munoz now admits that her physician approved her to return to work as of February 24, 2009, at

the relevant time for determining disability status it was not known when or if Munoz would be

released to return to work.  *See id.* at 61:15-62:19.  As "[i]nferences drawn from the underlying

facts . . . must be viewed in the light most favorable to the party opposing" summary judgment,

the Court finds that there is an issue of fact regarding whether Munoz's expected long-term

ability to work was substantially limited at the time of her dismissal.  *See Matsushita*, 475 U.S. at

587.

 Ecosphere's argument that Munoz was not actually disabled, because her disability was

merely temporary, would likely fail under the amended ADA, but not the pre-amendment ADA,

even if it is conceded that the parties knew of the disability's temporary nature all along.  One of

the purposes of the Federal Act is

> to reject the standards enunciated by the Supreme Court in *Toyota Motor Mfg.,*
> *Ky. Inc. v. Williams*, 534 U.S. 184 that the terms 'substantially' and 'major' in the
> definition of disability under the ADA 'need to be interpreted strictly to create a
> demanding standard for qualifying as disabled,' and that to be substantially
> limited in performing a major life activity under the ADA 'an individual must
> have an impairment that prevents or severely restricts the individual from doing
> activities that are of central importance to most people's daily lives.'

Sec. 2(b)(4), 122 Stat. at 3554.

The Federal Act does not explicitly overturn the finding in *Toyota Motor* that temporary disabilities do not qualify for ADA protection, and this Court is unaware of any precedent directly addressing this issue.  However, the Federal Act states that "the definition of disability . . . shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act."  Sec. 4(a), 122 Stat. at 3555; *see also Cockrell v. United Parcel Serv.*, 08-cv-128, 2009 U.S. Dist. LEXIS 70418, at *11-12 (N.D. Tex. Aug. 10, 2009) ("Congress made clear that it intends for the ADA to give broad protection to persons with disabilities.").  Further, the Federal Act rejects the *Sutton* requirement that the substantially limiting nature of an impairment be assessed with reference to ameliorative effects, including medication.  *See* Sec. 4(a), 122 Stat. at 3556.

Accordingly, if *Toyota Motor* and *Sutton* are not applicable to this case, Munoz's diabetes and diabetic complications may constitute a disability under the ADA.  Even if Munoz's diabetes only temporarily limited her ability to work, the stringent requirements of *Toyota Motor* may be rejected by the amended statute in favor of a more inclusive standard.  *See* Sec. 2(b)(4), 122 Stat. at 3554.  Further, if ameliorative effects, like insulin shots, are not to be considered, then Munoz's disability may not be temporary at all.  While her diabetes is currently controlled by insulin, it stands to reason that, without her medication, Munoz's diabetes would substantially impair her ability to work.  *See* Munoz Dep. 37:15-19.  Prior to beginning her insulin regiment, Munoz's blood sugar varied widely, such that she had a diabetic stroke, was unable to walk, had difficulty concentrating, and was not certified to work by her physician.  *See* Resp. 10. Accordingly, if *Toyota Motor* and *Sutton* do not control this case, Munoz could likely establish

that she is disabled.

### 2.    Munoz is not a qualified individual

Though the Court may assume, on summary judgment, that Munoz had a disability, she has not established that she was a qualified individual for purposes of proving a prima facie case of disability discrimination. *See McDonnell Douglas*, 411 U.S. at 802. A qualified individual is an individual who can perform the essential functions of the job with or without reasonable accommodations. *See, e.g., Turco*, 101 F.3d at 1092 (citing 42 U.S.C. §12111(8)). "As several courts have recognized, 'an essential element of any . . . job is an ability to appear for work.'" *Rogers*, 87 F.3d at 759 (ellipsis in original) (quoting *Carr v. Reno*, 23 F.3d 525, 530 (D.C. Cir. 1994)). Munoz does not dispute that she was unable to attend work for what, at the time, appeared to be a prolonged and uncertain period. *See* Pl.'s Facts ¶15. Accordingly, without a reasonable accommodation, Munoz was not qualified to perform the essential functions of her job.

Munoz alleges that she requested a reasonable accommodation – namely, FMLA leave – which Ecosphere denied. *See* Resp. 10. However, "FMLA leave is not a reasonable accommodation under the ADA; rather it is a right enforceable under a separate statutory provision." *Trevino v. United Parcel Serv.*, No. 3:08-CV-889-B, 2009 U.S. Dist. LEXIS 98738, at *38-39 (N.D. Tex. Oct. 23, 2009) (citing *Navarro v. Pfizer Corp.*, 261 F.3d 90, 101 (1st Cir. 2001) and *Vice v. Blue Cross & Blue Shield of Okla.*, 113 F. App'x 854, 857 (10th Cir. 2004)). Further, Munoz did not ask for any additional accommodation or a change to her position. *Burch*, 119 F.3d at 314 (stating that "an employee who requests only the opportunity to return to an unmodified, previously-held position fails to state a cognizable" reasonable accommodation

-24-

claim).  Accordingly, Munoz was not capable of performing the essential functions of her job, had not requested a cognizable accommodation, and was therefore not a qualified individual for purposes of establishing a prima facie case of discrimination under the Texas Labor Code. Because Munoz does not satisfy the second prong of a prima facie case of disability discrimination, summary judgment is granted to Echosphere on this claim.

**IV.     CONCLUSION**

For the reasons set forth above, Echosphere's Motion for Summary Judgment (Doc. No. 25) is **GRANTED** in part and **DENIED** in part.  The Motion is **DENIED** as to Munoz's FMLA claims.  The Motion is **GRANTED** as to the disability discrimination claim.  Echosphere's Motion to Strike (Doc. No. 28) is **DENIED**.

**SO ORDERED**.

**SIGNED** on this 15th  day of July 2010.

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE